# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| TYNISHA STAFFORD,<br><br>                        Plaintiff,<br><br>v.<br><br>ALLY FINANCIAL, INC., SECURITY FINANCE CORPORATION OF SOUTH CAROLINA d/b/a SUNBELT CREDIT, and MIDDLE GEORGIA MANAGEMENT SERVICES, LLC d/b/a QUICK LOANS OF WASHINGTON CO.,<br><br>                        Defendants. | Civil Action No.:<br><br>COMPLAINT FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Tynisha Stafford ("Plaintiff") brings this action against defendant Ally Financial, Inc., ("Ally"), defendant Security Finance Corporation of South Carolina d/b/a Sunbelt Credit ("Sunbelt"), and defendant Middle Georgia Management Services, LLC d/b/a Quick Loans of Washington Co. ("Quick Loans") (each a "Defendant," and collectively, "Defendants") and alleges, based upon Plaintiff's personal knowledge, the investigation of counsel, and information and belief, as follows:

## NATURE OF THE ACTION

1. This is an action to recover damages for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* (the "FCRA"). Defendants have been reporting inaccurate payment status information on Plaintiff's respective accounts. Specifically, although Plaintiff's accounts have been paid and closed with a $0 balance, Defendants continued to report that the current payment status of the account was past due. Although Plaintiff disputed the reporting in writing, Defendants failed to correct the reporting. Plaintiff was later denied multiple extensions of credit

based on the misleading information reported by Defendants and has been forced to deal with the aggravation and humiliation of a poor credit score. Accordingly, Plaintiff is entitled to damages.

## PARTIES

2. Plaintiff resides in Washington County, Georgia, and qualifies as a "consumer" as defined and protected by the FCRA. Plaintiff is an individual, not an entity.

3. Defendant Ally is a Delaware corporation that regularly conducts business in this District. Ally qualifies as a "furnisher" of credit information under the FCRA.

4. Defendant Sunbelt is a South Carolina corporation that regularly conducts business in this District. Sunbelt qualifies as a "furnisher" of credit information under the FCRA.

5. Defendant Quick Loans is a Georgia corporation that regularly conducts business in this District. Quick Loans qualifies as a "furnisher" of credit information under the FCRA.

## JURISDICTION AND VENUE

6. The claims asserted in this complaint arise under §1681s-2(b) of the FCRA. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and 15 U.S.C. §1681p.

7. Venue is proper in this District under 28 U.S.C. §1391(b).

## SUBSTANTIVE ALLEGATIONS

**The FCRA**

8. The FCRA is a federal statute designed to protect consumers from the harmful effects of inaccurate information contained their consumer credit reports. Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. *See* 15 U.S.C. §1681.

9. To that end, the FCRA imposes the following twin duties on consumer reporting agencies (or credit bureaus): (i) credit bureaus must devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports; and (ii) credit bureaus must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies.

10. Credit bureaus must immediately notify a furnisher if a consumer disputes the accuracy of information reported by that furnisher. Section 1681s-2(b) requires a furnisher, upon receiving a consumer's dispute, to conduct an investigation, mark the accounts as disputed, and update the reporting if necessary.

11. Plaintiff has a legally protected interest in Defendant fulfilling duties under the FCRA.

**Defendants Willfully Violated the FCRA and Harmed Plaintiff**

12. Defendants have been reporting inaccurate payment status information about Plaintiff's respective accounts.

13. Specifically as to Ally, Plaintiff's Ally account was opened in March 2013 and was subsequently paid and closed with a $0 balance. Nevertheless, Ally reported that the payment status of the account was 30-59 days past due.

14. Specifically as to Sunbelt, Plaintiff's two Sunbelt accounts were opened in September 2016 and June 2017, and were both subsequently paid and closed with a $0 balance. Nevertheless, Sunbelt reported that the payment status of the accounts were 30-59 days past due and 120-149 days past due, respectively.

15. Specifically as to Ally, Plaintiff's Ally account was opened in April 2014 and was subsequently paid and closed with a $0 balance. Nevertheless, Ally reported that the payment status of the account was 60-89 days past due.

16. The reporting of a derogatory payment status on an account that is paid and closed is inconsistent with the industry standard.

17. The payment status field is specifically designed to reflect the current status of the account. Thus, credit scoring algorithms specifically take this field into account when calculating and generating a credit score.

18. As a result, when a late status is reported in the pay status field, even where the account has a zero balance or zero monthly obligation, the credit scoring algorithm calculates the negative status as an active delinquency.

19. This causes the credit score generated to be lower than it would be if the pay status was reported as closed, consistent with industry standard.

20. A lower credit score hurts a consumer's creditworthiness because lenders have different tiers of risk. A consumer with a lower credit score will often be placed into a lower tier. Thus, Plaintiff's creditors and prospective creditors are misled as a result of a lower credit score caused by Defendants' erroneous payment status because the creditors make their credit lending decisions based substantially on the credit scores generated by the credit reporting agencies.

21. To address the incorrect status which was artificially lowering Plaintiff's credit score, on December 2, 2020, Plaintiff disputed the reporting of each of Defendants' respective accounts by submitting a written dispute through Trans Union's FCRA compliance department.

22. On December 10, 2020, Plaintiff also disputed the reporting of each of Defendants' respective accounts by submitting a written dispute through Equifax's FCRA compliance department.

23. The disputes explained that it was inaccurate to report a current delinquency in the Pay Status field on each respective account because the accounts were paid and closed.

24. Trans Union and Equifax, in turn and as required by federal statute, notified each Defendant of Plaintiff's dispute.

25. The receipt of the dispute triggered each Defendant's obligation to conduct an investigation, mark the account as disputed, and correct the misleading reporting.

26. Nevertheless, each Defendant failed to conduct an investigation, failed to mark the account as disputed, and failed to correct the misleading reporting.

27. Because of each Defendant's inaccurate reporting, Plaintiff was later denied multiple extensions of credit based on information contained in Plaintiff's Trans Union and Equifax credit reports, which included each Defendants' misleading delinquency.

28. Plaintiff has been forced to deal with the aggravation, humiliation, and embarrassment of a low credit score.

29. Accordingly, Plaintiff is entitled to damages.

## CAUSES OF ACTION

### COUNT I

**Against Defendants for Violating 15 U.S.C. §1681s-2(b)**

30. Plaintiff repeats and realleges the foregoing allegations if set forth in full herein.

31. Upon receiving notice of a dispute from a credit reporting agency, furnishers are required to conduct an investigation and correct the misleading information as necessary, as follows:

> After receiving notice pursuant to 15 U.S.C. § 1681i(a)(2) of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall –
>
> (A) conduct an investigation with respect to disputed information;
>
> (B) review all relevant information provided by the consumer reporting agency pursuant to § 1681i(a)(2) of this title;
>
> (C) report the results of the investigation to the consumer reporting agency; [and]
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information…

15 U.S.C. § 1681s-2(b) (emphasis added).

32. Defendants failed to conduct a timely and reasonable investigation of Plaintiff's dispute after receiving notice thereof from Trans Union, Experian, and Equifax.

33. Defendants willfully, intentionally, recklessly, and/or negligently continued to report inaccurate information to Trans Union and Equifax.

34. Instead of removing the inaccurate information, each Defendant improperly verified that the reporting was accurate.

35. As a result of each Defendant's misconduct, Plaintiff has suffered actual damages in the form of lost credit opportunities, harm to credit reputation and credit score and emotional distress.

36. Each Defendant's misconduct was a direct and proximate cause of Plaintiff's damages.

37. As a result of each Defendant's statutory violations, Plaintiff suffered statutory and actual damages as described herein and is entitled to recover statutory, actual, and punitive damages under 15 U.S.C. §1681n and §1681o.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands a judgment:

a) awarding Plaintiff statutory money damages, actual damages and punitive damages, including pre-judgment and post-judgment interest;

b) awarding attorney's fees and costs, and other relief; and

c) awarding such other relief as to this Court may seem just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  June 24, 2021			THE OAKS FIRM


				*/s/ Misty Oaks Paxton, Esq.*
				MISTY OAKS PAXTON, ESQ.

				3895 Brookgreen Point
				Decatur, Georgia 30034
				Tel: (404) 725-5697
				attyoaks@yahoo.com

Of Counsel:

**COHEN & MIZRAHI LLP**
EDWARD Y. KROUB
LEVI Y. EIDELMAN (pro-hac vice forthcoming)
300 Cadman Plaza West, 12th Floor
Brooklyn, NY  11201
Telephone:  929/575-4175
929/575-4195 (fax)
ekroub@cmlattorneys.com
leidelman@cmlattorneys.com

*Attorneys for Plaintiff*